## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2020, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela Sanchez
Assistant Section Chief,
Criminal Appeals

Alexandria Sons
Certified Legal Intern
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jordan R. Leinenbach,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 26, 2020

Court of Appeals Case No.
20A-CR-843

Appeal from the Dubois Circuit Court

The Honorable Nathan A. Verkamp, Judge

Trial Court Cause No.
19C01-1808-F1-867

**Mathias, Judge.**

[1] Jordan R. Leinenbach ("Leinenbach") pleaded guilty in Dubois Circuit Court to Level 3 felony neglect of a dependent causing serious bodily injury. The trial court sentenced Leinenbach to the maximum term of sixteen years of incarceration. Leinenbach appeals and presents two issues, which we restate as: (1) whether the trial court abused its discretion in sentencing Leinenbach, and (2) whether the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender. The State cross-appeals and presents one issue, which we restate as whether Leinenbach waived his right to appeal in his plea agreement. Concluding that Leinenbach did waive the right to appeal his sentence in his plea agreement, we affirm.

## Facts and Procedural History

[2] At the time relevant to this appeal, Leinenbach had two children with Cassandra Potts ("Potts"), with whom he cohabitated. The couple's son, M.R.L., was born on April 5, 2018, approximately twelve weeks premature. As a result of his premature birth, M.R.L. spent two months in the neonatal intensive care unit. The hospital released M.R.L. to his parents' care on June 8, 2018. The parents were given monitoring and medical equipment to care for the child at home. They were instructed to make sure that M.R.L. had a constant supply of oxygen and keep his heart rate monitor and oxygen monitor attached at all times except when bathing the child. They were also instructed that if they ever needed to perform CPR on M.R.L. to call 911. Both parents attended classes at the hospital to train them on how to care for M.R.L. at home, but Leinenbach admitted that he did not pay attention during the classes.

[3] At home, the parents did not follow the hospital's instructions. In fact, between June 11 and July 30, 2018, M.R.L. was connected to the oxygen monitor only three times, contrary to the hospital's instructions that the monitor be on at all times except when bathing.

[4] On July 29, 2018, Leinenbach and Potts took a nap at 3:00 p.m. Approximately an hour later, M.R.L. began to cry, which woke the parents up. Leinenbach checked on the couple's older child first, which made Potts angry. Potts then got a bottle for M.R.L. and an alcoholic beverage for herself and took M.R.L. upstairs to finish his nap. Potts then took a shower. Concerned that Potts was spending too much time in the shower, Leinenbach checked on her. Potts appeared to be cold and in shock, so Leinenbach got her some hot food. Leinenbach then gave M.R.L. a bottle, but the child vomited it all up. Leinenbach recognized that this was not normal "spit up" from an infant. He then gave the child another bottle, but M.R.L. again threw it all up.

[5] Later that night, at around 10:00 p.m., Potts called for Leinenbach to come upstairs. When he did so, he saw that M.R.L.'s oxygen monitor was going off and that his oxygen levels were very low. Potts and Leinenbach then began to perform two-finger chest compressions on the child. They performed several rounds of CPR, with each round lasting approximately ten minutes. After each round, M.R.L. seemed to improve, but then became unresponsive shortly afterwards. Leinenbach asked Potts if they should call 911 as instructed, but Potts insisted that they could manage the situation themselves. When he asked again whether they should call 911, Potts again said no and stated that if they

did, she would go to jail. Leinenbach decided not to call 911. And despite living approximately one block away from the hospital, he did not immediately take the child to the emergency room. Instead, at approximately 1:30 a.m., Leinenbach finally took M.R.L. to the emergency room. M.R.L. was quickly placed on life support and flown to Children's Hospital in Louisville, Kentucky. Two days later, he was taken off life support and died.

[6]     A subsequent autopsy of M.R.L. revealed that he had three fractured ribs and that the fractures were approximately two weeks old. M.R.L. had two bleeds in his brain and a severe hemorrhaging of the optic nerve. The medical examiner concluded that the injuries were the result of severe trauma. Hospital personnel also indicated that the injuries were not related to M.R.L.'s premature birth but were likely the result of child abuse.

[7]     Leinenbach later admitted that Potts had issues controlling her anger and referred to her as a "monster." Appellant's Confidential App. p. 64. He had also seen Potts handle M.R.L. and the parties' older child in a rough manner. Leinenbach's father had also seen Potts handle M.R.L. in a haphazard manner without properly supporting the infant's head. When Leinenbach's father scolded Potts for this, Leinenbach told his father to be quiet and that he would only make things worse. Leinenbach's father also heard Potts say, in reference to M.R.L., "[M]y God, why were you born?" Tr. p. 65. Leinenbach was also aware that Potts used illegal drugs while caring for the children.

[8] On August 6, 2018, the State charged Leinenbach with two counts: Level 1 felony neglect of a dependent resulting in death and Level 5 felony reckless homicide. On February 12, 2020, the State amended the charging information to include an additional charge of Level 3 felony neglect of a dependent causing serious bodily injury. That same day, Leinenbach agreed to plead guilty to the Level 3 felony in exchange for the State dismissing the remaining counts. The plea agreement left sentencing to the discretion of the trial court, noting that the sentencing range for a Level 3 felony was three to sixteen years. The plea agreement also contained the following waiver provisions:

> 12. I understand that by pleading guilty in accordance with this plea agreement, I knowingly and voluntarily agree to waive my right to appeal my sentence on the basis that it is erroneous or for any other reason, so long as the Court sentences me in accordance with the terms of this plea agreement.
>
> * * *
>
> 15. I hereby certify that I have read the above rights and I knowingly, intelligently, and voluntarily waive my right to appeal any sentence imposed by the Court, under any standard of review, including but not limited to, an abuse of discretion standard and the appropriateness of the sentence under Indiana Appellate Rule 7(B), so long as the Court sentences me within the terms of the plea agreement.

Appellant's App. p. 50.

[9] On March 13, 2020, the trial court accepted the plea and held a sentencing hearing. After hearing from several witnesses, including Leinenbach himself, the trial court found Leinenbach to be "unrepentant, egocentric, [and] self-

serving." Tr. p. 84. The trial court found the following as aggravating factors: (1) that the harm, injury, or loss suffered by M.R.L. was significant; (2) that Leinenbach had a criminal history that included four misdemeanor convictions and two felony convictions; (3) that the victim was less than twelve years old; (4) that Leinenbach had recently violated the terms of his probation, parole, or community corrections placement; and (5) that Leinenbach was in a position of care with M.R.L. The trial court found as mitigating factors that Leinenbach pleaded guilty, thereby admitting some responsibility, and that Leinenbach had another young child for whom Leinenbach's incarceration would be a hardship. The trial court found that the aggravating factors outweighed the mitigating factors and sentenced Leinenbach to sixteen years of incarceration, with credit for time served. After imposing the sentence, the trial court told Leinenbach:

> You have the right to appeal my sentence. You can file a motion to correct errors and/or a notice of appeal. It must be filed within 30 days. If you cannot afford an attorney, the Court could appoint an attorney for you.

Tr. p. 85. Although Leinenbach stated that he did not intend to file an appeal at that time, he subsequently filed a notice of appeal, and this appeal ensued.

## The State's Cross-Appeal

[10] Because this issue is dispositive, we first address the State's cross-appeal claim that Leinenbach waived his right to appeal in his guilty plea. As noted, Leinenbach's plea agreement included the following waiver provisions:

12.  I understand that by pleading guilty in accordance with this plea agreement, I knowingly and voluntarily agree to waive my right to appeal my sentence on the basis that it is erroneous or for any other reason, so long as the Court sentences me in accordance with the terms of this plea agreement.

* * *

15.  I hereby certify that I have read the above rights and I knowingly, intelligently, and voluntarily waive my right to appeal any sentence imposed by the Court, under any standard of review, including but not limited to, an abuse of discretion standard and the appropriateness of the sentence under Indiana Appellate Rule 7(B), so long as the Court sentences me within the terms of the plea agreement.

Appellant's App. p. 50. The State argues that this clearly and unambiguously waived Leinenbach's right to appeal his sentence. We agree.

[11]   It is well settled that a defendant may waive the right to appellate review of his sentence as part of a written plea agreement. *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008).[1] In *Creech*, the defendant entered into a plea agreement that contained a provision that read in relevant part: "I hereby waive my right to appeal my sentence so long as the Judge sentences me within the terms of my plea agreement." *Id*. at 74. Our supreme court held that this waiver was valid. *Id*.

---

[1] A defendant who waives the right to appeal his sentence may still argue in a post-conviction proceeding that his plea was coerced or unintelligent. *Id.*

[12] Leinenbach's plea agreement is analogous to all of these cases in which we have upheld the waiver of the right to appeal a sentence as valid. *See, e.g., Starcher v. State*, 66 N.E.3d 621, 621 (Ind. Ct. App. 2016) (holding that defendant waived right to appeal sentence where plea agreement provided, "[a]s a condition of entering this plea agreement, defendant knowingly and voluntarily agrees to waive the right to appeal the sentence on the basis that it is erroneous or for any other reason so long as the Judge sentences him/her within the terms of this agreement."), *trans. denied*; *Mechling v. State*, 16 N.E.3d 1015, 1016 n.2 (Ind. Ct. App. 2014) (holding that defendant waived right to challenge his sentence on appeal because his plea agreement provided, "I hereby waive my right to appeal my sentence so long as the Judge sentences me within . . . the terms of this Agreement," and "I hereby specifically waive the right to challenge the reasonableness of the sentence I receive in this cause under Appellate Rule 7(B). I also specifically waive the right to challenge the sentence on the basis that it is erroneous."), *trans. denied*; *Bowling v. State*, 960 N.E.2d 837, 838 (Ind. Ct. App. 2012) (holding that defendant waived right to appeal sentence where plea agreement provided, "[b]y pleading guilty you have agreed to waive your right to appeal your sentence so long as the Judge sentences you within the terms of your plea agreement."), *trans. denied*.[2]

---

[2] Leinenbach's citation to *Morris v. State,* 985 N.E.2d 364 (Ind. Ct. App. 2013), is unavailing. In that case, the waiver provision in the plea agreement merely provided that the defendant waived the right to appeal an "erroneous" sentence. *Id.* at 366. The *Morris* court held that this did not preclude a claim that the sentence was inappropriate under Appellate Rule 7(B) because "an 'erroneous' sentence is not the same as an

[13]     Our conclusion is not altered by the fact that, after the trial court had accepted the plea and sentenced Leinenbach, it misadvised him that he had the right to appeal his sentence. Our supreme court rejected this line of reasoning in *Creech*, where the trial court also misadvised the defendant, after it had accepted the plea agreement and sentenced him, that he had the right to appeal his sentence. 887 N.E.2d at 77. As explained in *Creech*, "[b]y the time the trial court erroneously advised Creech of the possibility of appeal, Creech had already pled guilty and received the benefit of his bargain. Being told at the close of the hearing that he could appeal presumably had no effect on that transaction." *Id.* The same is true here. By the time the trial court misadvised Leinenbach that he had the right to appeal his sentence, the trial court had already accepted the plea agreement containing the waiver of the right to appeal. A misadvisement after the fact does not alter the effect of the waiver.[3] *See id.*

---

'inappropriate sentence.'" *Id.* The plea agreement here was much broader, waiving the right to appeal a sentence whether "it is erroneous or any other reason," and specifically waived the right to challenge the sentence under Appellate Rule 7(B). Appellant's App. p. 50.

The same is true regarding Leinenbach's citation to *Lacey v. State*, 124 N.E.3d 1253 (Ind. Ct. App. 2019). In that case, the defendant's plea agreement included a waiver of the right to challenge his sentence. *Id.* at 1255. The defendant subsequently filed a statutory motion to correct an erroneous sentence, claiming that his habitual offender enhancement was improper as a matter of law. *Id.* On appeal from the trial court's denial of this motion, the State did not argue that the waiver provision applied to the motion to correct an erroneous sentence. *Id.* Here, unlike the defendant in *Lacey,* Leinenbach did not file a statutory motion to correct erroneous sentence; he is simply appealing his sentence. Moreover, Leinenbach does not claim that his sentence is illegal on its face, as did the defendant in *Lacey*. We therefore do not find *Lacey* to be controlling.

[3] In contrast, if a trial court at a plea hearing, prior to accepting the plea, misadvises the defendant that, despite language in a plea agreement to the contrary, he has the right to appeal his sentence, and neither the prosecutor nor the defense attorney contradicted this statement, we have held that the waiver was invalid. *Ricci v. State*, 894 N.E.2d 1089, 1093–94 (Ind. Ct. App. 2008), *trans. denied*. Here, the trial court did not misadvise Leinenbach prior to accepting the plea.

[14] Leinenbach also attempts to avoid the effect of his waiver by noting that, when advising him of the rights that he was giving up by pleading guilty, the trial court stated, "[y]ou understand that if this went to trial, [and] there was an adverse finding you'd have a right to appeal[,] but pleading guilty, you're *substantially* limiting your rights to an appeal." Tr. p. 22 (emphasis added). Leinenbach argues that this advisement implies that he was not wholly giving up his right to appeal. We disagree; the trial court's advisement was not misleading. Had Leinenbach gone to trial, he would have had the right to appeal the conviction and the sentence. By pleading guilty, he necessarily gave up the right to appeal his conviction. *See Tumulty v. State*, 666 N.E.2d 394, 395 (Ind. 1996) ("One consequence of pleading guilty is restriction of the ability to challenge the conviction on direct appeal."). And by entering into a plea agreement containing a provision that waived the right to appeal his sentence, Leinenbach gave up the right to appeal his sentence "on the basis that it is erroneous or for any other reason, so long as the Court sentences me in accordance with the terms of this plea agreement." Appellant's App. p. 50. Had the trial court sentenced him contrary to the terms of the plea agreement, Leinenbach could have appealed his sentence. But so long as the trial court sentenced him within the terms of the plea, which it did, he waived his right to appeal his sentence. This, as the trial court aptly put it, *substantially* limited Leinenbach's right to appeal.

[15] We also find the present case readily distinguishable from that presented in our supreme court's recent decision in *Johnson v. State*, 145 N.E.3d 785 (Ind. 2020).

In that case, our supreme court held that the defendant did not validly waive his right to appeal his sentence where the language of the plea agreement contained a vague, general waiver of the "right to appeal," and also included an unenforceable waiver of the right to seek post-conviction relief.[4] *Id.* at 786–87. Here, Leinenbach's plea agreement did not include a vague waiver of the general right to appeal, but explicitly waived his right to appeal his sentence. Moreover, Leinenbach's plea agreement did not include an unenforceable waiver of the right to seek post-conviction relief.

## Conclusion

[16] Because Leinenbach entered into a plea agreement that clearly and unambiguously waived his right to appeal his sentence, we conclude that Leinenbach may not now appeal his sentence.[5]

[17] Affirmed.

Bradford, C.J., and Najam, J., concur.

---

[4] We do not read the waiver provision here, which broadly waives a right to appeal on grounds that the sentence is erroneous "or for any other reason" to include post-conviction relief, as suggested by Leinenbach. We will not read into this broad language a waiver that is clearly prohibited by law. *See Johnson*, 145 N.E.3d at 786–87.

[5] Even if Leinenbach had not waived his right to appeal, his arguments that his sentence is improper would not prevail. The trial court identified valid aggravating factors that were well supported by the record. More importantly, there is nothing about the nature of Leinenbach's offense, which involved the senseless and tragic death of his infant son, or Leinenbach's character, as reflected by his history of criminal behavior and probation violations, that persuades us that his sixteen-year sentence is inappropriate.